Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4113 | DATE | FEB 26 2001 |
| CASE TITLE | Laborers' Pension Fund et al. v. Arnold | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the defendants' motion to dismiss [Doc. 8-1] is GRANTED. This case is CLOSED.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 27 2001 | 18 |
| | Notified counsel by telephone. | date docketed | |
| X | Docketing to mail notices. | | |
| X | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| dc(lc) | courtroom deputy's initials | 01 FEB 26 PM 1:16 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LABORERS' PENSION FUND; HEALTH
AND WELFARE DEPARTMENT OF THE
CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF
CHICAGO AND VICINITY; JOSEPH
CONCONATO; CHARLES COHEN;
JAMES P. CONNOLLY; RANDY
DALTON; MARK DEETJEN; MARTIN T.
FLANAGAN; CHARLES J. GALLAGHER;
WAYNE E. HEALY; J. MICHAEL
LAZZARETTO; DAVID LORIG; GARY
LUNDSBERG; ROBERT J. MADDEN;
TOD MASTERS; LIBERATO NAIMOLI;
DENNIS PASSARELLI; SCOTT PAVLIS;
FRANK RILEY; ROGER VIGNOCCHI;
SAM VINCI; and JAMES S. JORGENSEN,

    Plaintiffs,

v.

HUGH B. ARNOLD and ARNOLD &
KADJAN, a partnership,

    Defendants.

No. 00 C 4113

HONORABLE DAVID H. COAR

DOCKETED
FEB 27 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs Laborers' Pension Fund, the Health and Welfare Fund of the Construction and

General Laborers' Pension Fund, the Health and Welfare Fund of the Construction and General



Laborers' District Council of Chicago, and their Trustees (collectively, "Funds" or "Plaintiffs") bring this action against Hugh Arnold ("Arnold") and the law firm of Arnold and Kadjan ("firm") (collectively, "Defendants"). In Counts I-VIII of their first amended complaint, the Funds allege that Arnold, their former general counsel and collections counsel, breached the fiduciary duties imposed upon him by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. 29 U.S.C. § 1001 et seq. In Counts IX-X of the complaint, the Funds assert that the Defendants are liable as parties in interest for participating in transactions prohibited by ERISA. See 29 U.S.C. § 1106. Counts XI-XV set forth supplemental state law claims arising from the same core of facts supporting the ERISA claims.

Before this court is the defendant's motion to dismiss. Federal jurisdiction in this case is predicated entirely on ERSIA. Defendants, however, dispute the jurisdictional basis for Counts I-X. In addition, Defendants urge this court to decline the exercise of supplemental jurisdiction over Counts XI-XV. For the reasons discussed herein, Defendants' motion to dismiss is granted.

## I. Standard of Review

A motion to dismiss does not test whether the plaintiff will prevail on the merits but rather whether the plaintiff has properly stated a claim for which relief may be granted. Pickrel v. City of Springfield, 45 F.3d 1115, 1118 (7th Cir. 1995). In reviewing a motion to dismiss, the

court takes as true all factual allegations set forth in the complaint and draws all reasonable inferences in the plaintiff's favor. Antonelli v. Sheahnan, 81 F.3d 1422, 1427 (7th Cir. 1996). A motion to dismiss will be granted if it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir. 1997) (citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232-33, 81 L. Ed. 2d 59 (1984)). Although ambiguities will be construed in the plaintiffs favor, the court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. Coates v. Illinois State Bd. of Educ., 559 F.2d 445, 447 (7th Cir. 1977).

## II. Background

The Funds' First Amended Complaint sets forth the following allegations. The Funds are an employee pension benefit plan and a multiemployer plan. Under the applicable collective bargaining agreements, employers contribute to the Funds for the benefit of their employees. When a participating employer fails to make required contributions in a timely manner, the employer is liable for the delinquency in addition to liquidated damages and interest. Delinquencies that the Funds' representative cannot resolve are assigned to counsel. Arnold, a partner in the law firm of Arnold and Kadjan, became collection counsel for the Funds in 1971,

co-counsel to the Funds in 1979, and general counsel in 1985. Arnold served as sole counsel to the Funds until 1998, when he resigned from the position.

Counts I-VIII of the Plaintiffs' complaint are predicated on Arnold's role as an ERISA fiduciary. In Count I, the Funds maintain that Arnold breached his fiduciary duty by accepting less than the full amount of delinquent contributions; setting improper terms for installment payments; failing to engage in collection practices which maximized the Funds' recovery; and misrepresenting his practices to the Trustees. See 29 U.S.C. § 1104(a)(1)(A). Count II, which basically relies on the same allegations, asserts that Arnold failed to exercise discretion with the care, skill, and diligence of a prudent person as required under ERISA. See 29 U.S.C. § 1104(a)(1)(B). In Count III, the Funds claim that Arnold's actions, including providing the Trustees with inaccurate information so as to deprive them of the opportunity to exercise their discretion, were contrary to the documents and instruments governing the plan, which vest the Trustees with the authority to compromise the Funds' claims. See 29 U.S.C. § 1104(a)(1)(D).

In Counts IV-VIII, the Funds allege that Arnold violated his fiduciary duties by engaging in the following prohibited transactions: improperly extending credit to delinquent employers (Count IV); charging excess amounts for legal services (Count V); entering into agreements which reduced the amount of contributions claimed by the Funds without complying with certain procedural safeguards (Count VI); manipulating the amount of fees received from the Funds, in

part, by failing to demand that employers reimburse his fees (Count VII); engaging in transactions in which he had a conflict of interest (Count VIII). See 29 U.S.C. § 1106.

In Counts IX-X, the Funds impute liability upon both defendants for participating in prohibited transactions under ERISA. See id. Count IX asserts that Arnold's misrepresentations resulted in the defendant firm receiving excessive compensation. Count X alleges that the defendant firm billed the Funds for fees that were unwarranted under a contingency agreement.

Finally, in Counts XI-XV, the Funds set forth the following state law claims: breach of a contingency fee agreement (Count XI); fraudulent misrepresentation (Count XII); undue influence (Count XIII); breach of the fiduciary duty owed by lawyers to clients (Count XIV); and a claim for the release of escrow funds (Count XV).

### III. Discussion

A. Counts I-VIII

Section 409 of ERISA creates a federal cause of action against "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" by the statute. 29 U.S.C. § 1109(a). Pursuant to the statute, a "person is a fiduciary with respect to a plan to the extent he . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets. . . ." 29 U.S.C. § 1002(21)(A)(1).

Counts I-VIII of the Funds' complaint rely on Arnold's status as an ERISA fiduciary to establish federal jurisdiction. Although Plaintiffs set forth a laundry list of Arnold's misdeeds, they can be grouped into the following general allegations: that Arnold exercised discretion when he compromised claims without the express consent and authorization of the Trustees and that he took on a fiduciary role when he misinformed the Trustees about his activities, thereby inducing the Trustees to make judgments based on inaccurate information.

This court's inquiry, then, must be to determine whether the conduct described above qualifies Arnold as an ERISA fiduciary so as to subject him to the duties and liabilities imposed by ERISA. The court, however, is not persuaded that the ERISA definition of a fiduciary is so expansive so as to encompass the acts alleged herein. The Funds expect to impute ERISA liability on an attorney who was merely providing legal services, but the law does not contemplate such a broad reading of the statute, even if allegations of malpractice are involved.

The regulations promulgated under ERISA provide that attorneys "performing their usual professional functions will ordinarily not be considered fiduciaries" of an employee benefit plan unless there is a showing that the attorney exercised substantial control over the management of the plan or the disposition of its assets. 29 C.F.R. § 2509.75-5, D-1. See also Health Cost Controls of Illinois v. Washington, 187 F.3d 703, 709 (7th Cir. 1999). Although the regulations are not controlling, the courts have nevertheless adopted the same stance. There is no per se rule that precludes professionals who serve ERISA plans from becoming fiduciaries. Pappas v. Buck

Consultants Inc., 923 F.2d 531, 538 (7th Cir. 1991). However, unless the professional "undertakes tasks that transcend the usual scope of the professional-client relationship," she does not become a fiduciary within the meaning of ERISA. Pappas, 923 F.2d at 538. See also Nieto v. Ecker, 845 F.2d 868, 870 (9th Cir. 1988) ("[A]n attorney rendering professional services to a plan is not a fiduciary so long as he does not exercise any authority over the plan in a manner other than by usual professional functions.")

Here, the bulk of the Plaintiff's allegations center on Arnold's improper collection practices. Plaintiffs contend that Arnold unilaterally settled claims for less than their actual value, waived liquidated damages and interest charges on claims, and reduced subrogation claims-- all without the knowledge or approval of the Trustees. Such actions, argue the Funds, evidence the extent of Arnold's discretionary control and implicate him as an ERISA fiduciary.

The Funds' argument is foreclosed by the case law. Nieto teaches that the type of conduct alleged by the Funds does not fall outside the customary role of collections counsel. 845 F.2d 868. In Nieto, trustees of a multiemployer pension plan argued that the attorney retained to collect delinquent contributions exercised control over the disposition of fund assets by virtue of his control over the filing and prosecution of lawsuits. 845 F.2d at 870. When counsel failed to collect contributions, the Plaintiffs asserted, he exceeded the scope of his usual professional duties and became an ERISA fiduciary. Id. The Ninth Circuit rejected the plaintiff's argument. In affirming the district court's dismissal of the plaintiff's complaint, the court observed:

> Plaintiffs contend [ ] that [the defendant collection counsel] effectively exercised such authority because the employer contributions he failed to collect were plan assets under his discretionary control. By failing to collect those contributions, the argument runs, [the defendant] dissipated those assets. This argument proves far too much. Under this rationale anyone performing services for an ERISA plan [including] an attorney . . . would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized those assets. We find no basis for expanding the meaning of fiduciary in this fashion and [precedent] effectively precludes such an expansion.

845 F.2d at 871.

In the same way, this court finds that the allegations contained in the Funds' complaint fail to state a claim upon which relief can be granted. Even if Arnold decided which claims to prosecute and which to compromise, and even if he failed to maximize the amount of contributions collected, these actions, as <u>Nieto</u> illustrates, fall squarely within the scope of a pension attorney's professional duties. As such, Arnold cannot be considered a fiduciary within the meaning of ERISA.

Plaintiffs point to <u>Health Cost Controls</u> in support of their position. In that case, the defendant firm was hired by the plan to administer claims for reimbursement. In determining that the defendant firm was an ERISA fiduciary, the Seventh Circuit expressly relied on the fact that the firm had been assigned the claims. 187 F.3d at 709. The defendant compared itself to an ERISA lawyer, but the court rejected the analogy, noting that while a lawyer acts on behalf of her client, the firm, by virtue of the assignment, retained independent control over the claims. <u>Id.</u>

Plaintiffs equate Arnold with the defendant firm in Health Cost Control. They contend that Arnold, like the defendant firm in that case, retained total discretion over the handling of the claims. Therefore Arnold too should be deemed a fiduciary, Plaintiffs argue. What Plaintiffs fail to grasp, however, is the implication of the assignment in Health Cost Controls. Because the Health Cost Control defendant was assigned the collection claims, it acted on its own accord, not as an agent of the fund. Therefore, as the Seventh Circuit observed, there existed no basis other than ERISA upon which to impose a fiduciary duty upon the defendant firm. See Health Cost Controls, 187 F.3d at 709 (observing that imposing an additional layer of fiduciary duty on lawyers under ERISA would financially burden rather than protect pension plans). In contrast, Arnold's actions were circumscribed within the sphere of an attorney-client relationship. Even if he engaged in misconduct within this sphere, he nevertheless did not stray from this sphere. Ultimately, Arnold remains accountable to the Trustees in his role as a lawyer—in other words, Arnold is subject to the fiduciary duties imposed on him by his profession.

Thus the common law rule: a lawyer who acts within her professional capacity will not be deemed an ERISA fiduciary. Pappas, 923 F. 2d at 538. This position makes sense from a policy perspective. Because attorneys and other professionals are "subject to whatever fiduciary duty or other duties his profession imposes upon him . . . there is less need in the interest of the plan to hedge the lawyer with ERISA fiduciary status." Health Cost Controls, 187 F.3d at 709. ERISA

trustees and beneficiaries do not lack a remedy against an attorney who abuses his professional relationship with the client and ERISA need not serve as that remedy.

Surely, Arnold, in his role as collections counsel, exercised discretion over litigation management and other legal matters for which he was retained. Some of the tasks undertaken by Arnold were expressly delegated-- namely, setting the terms the terms of installments agreements with delinquent employers and accepting the maximum amount of liquidated damages on delinquencies-- while other tasks were undelegated-- such as compromising Fund claims in delinquency and subrogation cases and waiving liquidated and interest charges. Whether or not expressly delegated, all of Arnold's alleged acts fell within the customary role assumed by collections counsel. See Pappas, 923 F.2d at 535 (listing cases in which courts have dismissed contention that attorneys and others who advise plan trustees qualify as ERISA fiduciaries).

The case law recognizes that a limited amount of discretion is inherently necessary to the carrying out of professional services. Accordingly, the courts have permitted professionals to exercise discretion as long as such discretion occurs within the discrete realm of the professional services provided. See, e.g., Useden v. Acker, 947 F.2d 1563, 1577 (11th Cir. 1991) (ackowledging that professional adviser could effectively exercise discretionary control over plan but declining to impose ERISA liability where conduct does not depart from usual professional function); Yeseta v. Baima, 837 F.2d 380, 385 (9th Cir. 1990) (finding no ERISA liability where defendant did not control the plan in a manner other than by a usual professional function). The

minimal discretion involved in the carrying out of professional functions, the courts have found, does not give rise to the discretionary control of the nature contemplated by ERISA.

In fact, the courts have permitted attorneys, outside the context of collections counsel, to exercise a limited amount of professional discretion, at least to the extent necessary to carry out their services. In Custer v. Sweeney, 89 F.3d 1156 (4th Cir. 1996), for example, the trustees alleged that the plan's attorney breached fiduciary duties imposed by ERISA when he exercised "de facto control" over the arrangements of a lease, made expenditures and approved payments for unauthorized purposes from the funds, and withheld information and actively deceived the trustees. 89 F.3d at 1162. The appellate court rejected the contention that the attorney fell within the definition of an ERISA fiduciary and upheld the district court's dismissal of the complaint. Id. at 1163.

As one commentator explained:

> A secretary to a fiduciary may have discretion as to some mundane matters of plan management, but secretaries are not thereby made ficudiaries, not even limited ones. In principle, they could be, but experience and common sense suggest that a mimunim level of discretion should be fixed, below which a person has no fiduciary responsibilities at all.

Jay Conison, The Federal Common Law of ERISA Plan Attorneys, 41 Syracuse L. Rev. 1049, 1073 (1990) (quoted in Useden, 947 F.2d at 1574). In view of the case law, this court declines to read Health Cost Control as disallowing a limited measure of discretion necessary to carry out

professional services. In the context of the instant case, Health Cost Controls does not subject to ERISA liability collections counsel who compromise claims even without trustee approval.

In the same way, Arnold cannot be deemed a fiduciary because he misled and even actively deceived the Trustees about his practices. As discussed previously, the complaint does not indicate that the Trustees ceded discretionary authority over the plan to Arnold or his firm. The Trustees may have relied upon Arnold to serve as collections counsel, but that, in itself, does not trigger ERISA liability. See Pappas, 923 F.3d at 538 (observing that efficiency compels plan trustees to hire and rely on professionals). Nor have the Funds alleged that the Trustees substantially relied on Arnold for his special expertise. Compare Carpenters' Local Union No. 964 Pension Fund v. Silverman, 1995 WL 378539 (S.D.N.Y. 1995) (acknowledging that mere influence over a trustee's investment decisions does not make attorney a fiduciary, but distinguishing case because, among other considerations, trustees alleged that they had depended on law firm's self-proclaimed expertise) with Pappas, 923 F.2d at 535 (stating that fiduciary status is marked by "actual decision-making power rather than [ ] the influence that a professional may have over the decisions made by the plan trustees she advises"). At most, the allegations establish that Arnold violated the duties imposed on him by his profession. See Custer, 89 F.3d at 1163 (finding that complaint alleging that defendant attorney usurped trustee decisionmaking authority by controlling information relevant to the propriety of leasing transactions failed to state an ERISA claim ).

There has been no showing that Arnold seized effective control over the plan or its assets. At most, the Funds' complaint alleges that Arnold committed malpractice. That Arnold may have conducted himself in a tortious manner, however, does not change the court's disposition of this case. If negligent performance of legal services was the standard for imposing fiduciary status, then "anyone performing services for an ERISA plan . . . would be rendered a fiduciary insofar as he exercised some control over trust assets and through negligence or dishonesty jeopardized those assets." Nieto, 845 F.2d at 87-71. The courts have not embraced such an expansive view of ERISA. Instead, the courts have consistently held that allegations of malpractice do not transform a claim into an ERISA action. See Pappas, 923 F.2d at 538; Custer, 89 F.3d at 1162.

It is true, as Plaintiffs point out, that fiduciary status is not dependent on an individual's title or formal position. Instead, the court's inquiry is functional: it focuses on the extent of actual authority exercised by the defendant over a plan or its assets. See Useden, 947 F.2d at 1574. See also Donovan v. Mercer, 747 F.2d 304, 308 (5th Cir. 1984) (observing that fiduciary status "should be defined not only by reference to particular titles such as 'trustee' by also by considering the authority which a particular person has or exercises over an employee benefit plan").

Accordingly, the courts have imposed ERISA liability on pension plan attorneys in certain instances. Those cases, however, involved direct control over a fund's assets by virtue of

an attorney's membership on a decisionmaking board. See, e.g., Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 881 (S.D.N.Y. 1997) (noting that attorney's involvement in fund's administrative committee could support inference of fiduciary status); In re Fruehauf Trailer Corp., 250 B.R. 168, 205 (D. Del. 2000) (finding fiduciary status sufficiently alleged where attorney was corporate officer and director of corporation sponsoring ERISA plan). Put differently, in those cases, the defendant acted outside the bounds of a lawyer and took an active role as a decisionmaker. In contrast, here the court is confronted with a case in which Arnold was hired to collect delinquent contributions. All the charges advanced against Arnold are limited to the acts he undertook within the professional sphere for which he was hired to serve the plan. Such acts do not involve the level of discretion necessary to implicate ERISA.

The Funds may assert that Arnold exercised discretion, but their complaint is devoid of specific allegations demonstrating that Arnold transcended the role of legal counsel. Custer, 89 F.3d at 1163 (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, 317-19 (2d ed. 1990) (observing that the court need not accept plaintiff's "unwarranted deductions" or "sweeping legal conclusions" cast in the form of factual allegations)). See also Northern Trust Co. v. Peters, 69 F.3d 123, 129 (7th Cir. 1995) (concluding that a "party can plead himself out of court by . . . alleging facts which . . . demonstrate that he has no legal claim"). Counts I-VIII are accordingly dismissed.

B. Counts IX-X

In Counts IX and X, the Funds allege that Arnold and his firm are liable as parties in interest for participating in prohibited transactions. The Funds advance their theory under §406 of ERISA, which prohibits certain transactions between ERISA plans and parties in interest. See 29 U.S.C. § 1106(a)(1)(C)[1]. Section 406, when read together with §408, forbids plan fiduciaries from contracting for legal services with a party in interest unless reasonable compensation is involved. See 29 U.S.C. § 1108(b)(2)[2]. The Funds maintain that Defendants, as parties in interest, received excessive compensation for their collection services and thus violated ERISA.[3]

Section 406 seeks to prevent plan fiduciaries from engaging in certain transactions that benefit third parties at the expense of plan participants and beneficiaries. See Marks v. Independence Blue Cross, 71 F. Supp. 2d 432, 437 (E.D. Pa. 1999). The provision fulfills this

---

[1] Section 1106(a) of ERISA reads in relevant part:
Except as provided in section 1108 of this title—
A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services or facilities between the plan and a party in interest.
29 U.S.C. §1106(a)(1)(C).

[2] Section 408(b)(2) exempts from §406's prohibitions:
Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.
29 U.S.C. § 1108(b)(2).

[3] Defendants concede that they qualify as parties in interest. See Nieto, 845 F.2d at 873 (noting that collections counsel is a party in interest under ERISA, 29 U.S.C. § 1002(14)(B)).

purpose in two parts. Section 406(b) sets forth per se prohibitions against self-dealing transactions. Id. (citing Kouba v. Joyce, No. 83 C 451, 1987 WL 33370, at *4 (N.D. Ill. Dec. 31, 1987)). Section 406(a), which the Funds rely on in the instant case, forbids plan fiduciaries from entering into "sweetheart deals" with parties in interest to an ERISA plan. 71 F. Supp. 2d at 438. Unlike §406(b), §406(a) does not set forth a per se prohibition. Rather, §1006(a) forbids transactions in which the fiduciary and the party in interest have actual or constructive knowledge that the transaction at issue is unlawful. See Harris Trust and Savings Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 120 S. Ct. 2180, 2190, 147 L.Ed.2d 187 (2000); Marks, 71 F. Supp. 2d at 438.

To state a claim under §406(a) against Arnold and the defendant firm,[4] then, Plaintiffs must allege not only that the defendants knew that they received excessive compensation, but also that the plan fiduciaries knew or should have known that the payment tendered to Defendants was unreasonable.[5] See Marks, 71 F. Supp. 2d at 438; Kouba, 1987 WL 33370, at

---

[4] Although the language of §406 appears to permit a cause of action only against plan fiduciaries, the Supreme Court has held that a non-fiduciary party in interest can be sued for its involvement in a transaction prohibited under 29 U.S.C. § 1106. See Harris, 120 S. Ct. at 2190.

[5] This would seem to put Plaintiffs in a peculiar position. After all, the Trustees would be acknowledging that they, as fiduciaries of the plan, knowingly entered into an unreasonable transaction with Defendants. The Supreme Court discussed the seeming incongruity of allowing a culpable fiduciary to seek restitution:

> The common law sees no incongruity in such a rule and for good reason: Although the trustee bases his cause of action upon his own voluntary act, and even though the act was knowingly done in breach of his duty to the beneficiary, he is permitted to maintain the action, since the purpose of the action is to recover money or other property for the trust

*6. Plaintiffs argue that to state a claim under §406, they need only assert that the plan fiduciaries knew or should have known that they were entering into a transaction with a party in interest. It is unnecessary, Plaintiffs maintain, to allege that the fiduciaries knew that the transaction at issue was prohibited.

The case law, however, suggests that Plaintiffs must allege that the plan fiduciaries were aware not only of the defendant's party-in-interest status, but also the unlawful nature of the transaction.[6] See Harris, 120 S. Ct. at 2190 (citing Lockheed Corp. v. Spink, 517 U.S. 882, 888-89, 116 S. Ct. 1783, 1788-89, 135 L.Ed.2d 153 (1996) ("[I]n order to sustain an alleged transgression of §406(a), a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction.")); Marshall v. Kelly, 465 F. Supp. 341, 351 (W.D. Okl. 1978) (examining separately fiduciaries' awareness of party-in-interest affiliation and knowledge of prohibited nature of transaction). But see Donovan v. Schmoutey, 592 F. Supp. 1361, 1392 (D.

---

estate, and whatever he recovers he will hold subject to the trust.
Harris, 120 S. Ct. at 2190 (internal citations omitted).

    [6] The Funds' theory is that plaintiffs need only allege that they knew they were hiring an attorney to provide legal services to state a claim under §406.. An attorney who works for an ERISA plan meets the definition of a party in interest. See 29 U.S.C. § 1002(14)(B). Additionally, but for the exemption articulated in §408, §406 bars a party in interest from providing services to the plan. Thus, according to the Funds, any attorney accepting employment from a pension fund could be sued under ERISA based solely on her employment relationship with the trustees. Further, to escape such liability, the attorney would have to affirmatively show that she received reasonable compensation to claim exemption from liability. Plaintiff's position would put every pension plan attorney on the defensive.

Nev. 1984) (suggesting that trustee knowledge that transaction benefit party in interest sufficient to state claim).

Plaintiffs fail to allege that an ERISA fiduciary had actual or constructive knowledge that the Defendants were receiving excessive compensation. On the contrary, Plaintiffs assert in their amended complaint that the Trustees did not learn of the misconduct at issue until early 1998, after Arnold resigned his position as counsel to the Funds. Nowhere do the Plaintiffs allege that the Funds were knowingly involved in a prohibited transaction.[7] Therefore, Plaintiffs fail to state a claim under §406(a). See Marks, 71 F. Supp. 2d at 438 (granting summary judgment where Plaintiffs fund trustees and plan participants failed to demonstrate that fund knowingly engaged in self-dealing).

## C. Counts XI-XV: Supplemental Jurisdiction

Counts XI-XV of Plaintiffs' complaint set forth claims under Illinois common law, all arising from Arnold's alleged misconduct in providing legal services to the Funds. Subject matter jurisdiction over Counts XI-XV are predicated solely on the court's supplemental jurisdiction.

---

[7] The relevant time for assessing whether the parties knew or should have known that they were violating section 406 is on the date that they entered into the transaction at issue. See Kouba, 1997 WL 33370, at *6.

Generally, "when all the federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state law claims rather than resolving them on the merits." Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 727 (7th Cir. 1998) (internal citations omitted). The ERISA-based claims articulated in this complaint have been dismissed herein. In the absence of federal jurisdiction over Counts I-X, the court declines to exercise supplemental jurisdiction over the state law claims set out in Counts XI-XV.

## IV. Conclusion

For the foregoing reasons, Plaintiff's First Amended Complaint is dismissed.

**Enter:**

*[signature]*

**David H. Coar**
**United States District Judge**

Dated: **FEB 2 6 2001**